# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIERRA CLUB,<br><br>    Plaintiff,<br>v.<br><br>TALEN ENERGY CORPORATION and<br>BRUNNER ISLAND LLC,<br><br>    Defendants. | **CONSENT DECREE**<br><br>Case No.:   1:18-cv-01042-CCC |

Date lodged in Court:  May 17, 2018

Date entered in Court:

**CONSENT DECREE**

WHEREAS, Sierra Club ("Plaintiff") brought this action against Talen Energy Corporation ("Talen") and Brunner Island LLC (collectively with Talen, "Defendants," and collectively with Plaintiff, the "Parties"), the owners and operators of the Brunner Island Steam Electric Plant ("Brunner Island" or the "Facility") pursuant to Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, Section 601 of the Pennsylvania Clean Streams Law ("CSL"), 35 P.S. § 391.601, and Section 7002(a)(1) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1), for injunctive relief and assessment of civil penalties for certain alleged violations of the above referenced statutes and their implementing regulations at Brunner Island (the "Complaint");

WHEREAS, Defendants deny Plaintiff's allegations and maintain that they have been and remain in compliance with the CWA, CSL and RCRA and are not liable for civil penalties or injunctive relief, and nothing herein shall constitute an admission of liability;

WHEREAS, the Parties desire to settle all matters by Consent Decree and avoid the costs, delay, and uncertainty of litigation;

WHEREAS, the Parties agree that the settlement of this action through this Consent Decree without further litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving the matter;

WHEREAS, pursuant to Section 505(b)(3) of the CWA, this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the statutorily-mandated forty-five (45) day review period; and

WHEREAS, the Parties consent to the entry of this Consent Decree without trial of any issues.

NOW, THEREFORE, it is hereby ORDERED AND DECREED as follows:

## I. JURISDICTION, VENUE AND APPLICABILITY

1. This Court has jurisdiction over the Parties to and the subject matter of this action under Section 505 of the CWA, 33 U.S.C. § 1365, Section 7002 of RCRA, 42 U.S.C. § 6972, and under 28 U.S.C. §§ 1331.

2. Venue is proper in this Judicial District under Section 505(c) of the CWA, 33 U.S.C. § 1365(c), Section 7002 of RCRA, 42 U.S.C. § 6972, and under 28 U.S.C. § 1391.

3. Upon the Date of Entry, the provisions of this Decree shall apply to, be binding upon, and inure to the benefit of the Parties, as well as to each individual Party's successors and assigns.

4. The Parties consent to entry of this Consent Decree without further notice.

## II. DEFINITIONS

5. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, or regulations implementing the Clean Air Act, shall have the meaning set forth in the Clean Air Act or those regulations. Similarly, unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the CWA, 33 U.S.C. §§ 1251 *et seq.*, or regulations implementing the CWA, shall have the meaning set forth in the CWA or those regulations. Terms used in this Consent Decree that are defined in RCRA, 42 U.S.C. §§ 6901 *et seq.*, or regulations implementing RCRA, shall have the meaning set forth in RCRA or those regulations. Terms used in this Consent Decree

that are defined in the CSL, 35 P.S. §§ 391.101 *et seq.*, or regulations implementing the CSL, shall have the meaning set forth in the CSL or those regulations.

6. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "30-Day Rolling Average NOx Emission Rate (for Brunner Island Units 1-3) " during the Ozone Season shall be determined using the methodology found in PA Code 129.100 (a)(1)(i)-(iii) (for units measuring emissions with continuous emissions monitors (CEMs)), with total NOx emissions and total heat input from Brunner Island Units 1-3 used in the calculation. Furthermore, an operating day shall be defined as one with emissions reported from any one of the three units.

b. "Brunner Island" means all real and personal property owned or operated by Brunner Island LLC, together with all on-site and off-site locations to which hazardous substances, pollutants or other contaminants generated, released or disposed by Brunner Island are located or come to be located.

c. "Clean Air Act" or "CAA" means the federal Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, and its implementing regulations.

d. "Clean Water Act" or "CWA" means the federal Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and its implementing regulations.

e. "Connecticut and Delaware 126 Petitions" shall mean the petitions filed with EPA, pursuant to Clean Air Act Section 126, by the states of Connecticut and Delaware, titled, respectively, "Petition to the United States Environmental Protection Agency Pursuant to Section 126 of the Clean Air Act for Abatement of Emissions from the Brunner Island Coal

Fired Generating Units in Pennsylvania, as Such Generating Units Significantly Contribute to Nonattainment of, and Interfere with Maintenance of, the 2008 Ozone National Ambient Air Quality Standard in the State of Connecticut" and "Delaware CAA 126 Petition" and dated, respectively, June 1, 2016 and July 7, 2016.

      f.     "Clean Streams Law" or "CSL" means the Pennsylvania Clean Streams Law, 35 P.S. §§ 391.101 *et seq.*, and its implementing regulations.

      g.     "Date of Entry" shall mean the date this Consent Decree is approved or signed by the United States District Court Judge.

      h.     "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Middle District of Pennsylvania.

      i.     "Day" shall mean, unless otherwise specified, calendar day.

      j.     "Environmental Laws" shall mean any existing or future federal environmental statute or regulation, including without limitation, the Clean Water Act, Safe Drinking Water Act, Clean Air Act, Resource Conservation and Recovery Act (including the CCR Rule) and the Comprehensive Environmental Response Compensation and Liability Act, or any existing or future Pennsylvania or local environmental law, regulation or common law cause of action, including without limitation, the Pennsylvania Constitution, Clean Streams Law, Air Pollution Control Act, Solid Waste Management Act, Hazardous Sites Cleanup Act and the Land Recycling and Environmental Remediation Standards Act.

      k.     "EPA" shall mean the United States Environmental Protection Agency.

   l. "Interim Period" shall mean the period from January 1, 2023 to December 31, 2028.

   m. "Ownership Interest" means part or all of any Defendant's legal or equitable ownership interest in Brunner Island.

   n. "Ozone Season" shall mean May 1 through September 30 of any calendar year.

   o. "PADEP" shall mean the Pennsylvania Department of Environmental Protection.

   p. "Parties" shall have the meaning set forth in the recitals.

   q. "Term" of the Consent Decree shall mean the period of time between the Date of Lodging and the date the Consent Decree is terminated in accordance with Section XI (Termination).

   r. "RACT 2 Regulations" means the Reasonably Available Control Technologies regulations and regulatory revisions contained in Pennsylvania Environmental Quality Board's 2016 Regulatory Rulemaking #7-485, Additional RACT Requirements for Major Sources of NOx and VOCs.

   s. "Resource Conservation and Recovery Act" or "RCRA" means the federal Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, and its implementing regulations.

### III.  ACTIONS OF THE PARTIES

7. By the end of the Ozone Season of 2022, Defendants shall cease combustion of coal at Brunner Island during the Ozone Season, except that such combustion shall be allowed during each Ozone Season in the Interim period as long as the following conditions are met:

   a. The 30-Day Rolling Average NOx Emission Rate (for Brunner Island Units 1-3) is at or below 0.12 lbs./MMBtu, calculated at the end of each operating day during each Interim Period Ozone Season when coal has been burned, with the first compliance demonstration made at the end of the 30th operating day in each Ozone Season during which coal has been burned. Defendants shall notify Plaintiff of each operating day when coal was burned during the Ozone Season, within thirty (30) days after the end of any Ozone Season during which coal was burned.

   b. Brunner Island shall emit less than 6,800,000 tons of carbon dioxide ("CO2") from Brunner Island Units 1-3 per calendar year during which coal has been burned during the Ozone Season during the Interim Period.

8. By December 31, 2028, Defendants shall cease combustion of coal at Brunner Island, other than during periods of time (including time required for startup and shutdown) when PJM has declared an *Emergency Action* as defined in PJM Manual 13 (Emergency Operations) or an equivalent standard, and when gas is not available or the supply of gas to Brunner Island is interrupted. Notwithstanding termination of this Consent Decree pursuant to Section XI, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

9. Plaintiff shall not initiate or participate in any judicial or administrative proceeding, or submit written comments, challenging any permit modifications or changes necessary for Defendants to effectuate the commitments in Paragraphs 7 or 8, or permit

modifications or changes necessary to effectuate, or required as a result of, discontinuation of coal-fired operations at Brunner Island.

## IV.   NOTIFICATIONS AND RECORDKEEPING

10.   All notifications, submittals, and other information required by this Consent Decree shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.

For Plaintiff:

Mark Kresowik, Eastern Region Deputy Director
Sierra Club's Beyond Coal Campaign
50 F St NW Eighth Floor
Washington, DC 20001

Zachary Fabish, Senior Attorney
Sierra Club Environmental Law Program
50 F St NW Eighth Floor
Washington, DC 20001

For Defendants:

Tom Hickes, Plant Manager
Brunner Island, LLC
P.O. Box 221
York Haven, PA 17370-0221

David Paulin, Assistant General Counsel
Talen Energy
835 Hamilton St., Ste. 150
Allentown, PA 18101

## V.   EFFECT OF SETTLEMENT

11.   This Consent Decree represents full and final settlement between the Parties.

12. Pursuant to this Consent Decree Plaintiff releases and waives any and all civil claims, causes of action, demands, actions and/or rights of action, that Plaintiff may have, as of the Date of Entry, against Defendants for alleged violations of the CWA, CSL, RCRA, and/or the Pennsylvania Solid Waste Management Act, 35 P. S. § 6018.101, *et seq.*, and all regulations promulgated thereunder, including but not limited to those violations alleged in the Complaint or in the Notice of Intent, dated February 14, 2018, and attached hereto as Exhibit A. Notwithstanding termination of this Consent Decree pursuant to Section XI, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

13. Plaintiff releases Defendants from any and all past and present, as of the Date of Entry, legal or equitable claims arising under any Environmental Laws, based on the same or similar allegations contained in the Complaint or the Notice of Intent, or otherwise related to coal combustion operations at Brunner Island. "Claims" is used in this Consent Decree in its broadest sense, including without limitation any and all causes of action for damages, penalties, attorneys' fees, declaratory and injunctive relief, or other rights of action. Notwithstanding termination of this Consent Decree pursuant to Section XI, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

14. Plaintiff shall not fund any third party litigation, whether brought by the government or private parties, involving any claims settled, released or waived by this Consent Decree. Notwithstanding termination of this Consent Decree pursuant to Section XI, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

15. Without limiting the generality of Paragraphs 11-14, Plaintiff shall not:

9

        a.      Initiate or participate in any judicial or administrative proceeding or submit written comments challenging the Commonwealth of Pennsylvania's State Implementation Plan (SIP) submittal that includes its RACT 2 Regulations, as pertains to limits or requirements applicable to Brunner Island; additionally, Plaintiffs shall not, for the duration of this Consent Decree, initiate or participate in any judicial or administrative proceeding or submit written comments advocating for a NOx emission limit of less than 0.10 lbs. NOx/MMBtu at Brunner Island when the facility is firing gas;

        b.      Initiate or participate in any judicial or administrative proceeding or submit written comments opposing any and all existing and future applications and permit renewals for National Pollution Discharge Elimination System ("NPDES") permits, Residual Waste permits, Water Quality Management Permits, Water Obstruction and Encroachment Permits, Corp of Engineers 404 Permits, Title V permit, or Plan Approvals as pertains to coal combustion-related operations at Brunner Island.  In lieu of withdrawing Plaintiff's previously submitted comments on Brunner Island's draft NPDES permit, the Parties agree to provide PaDEP with a copy of this Consent Decree after it is entered by the Court.

        c.      Advocate in any judicial, legislative, or administrative proceeding for any additional obligations, controls, or restrictions specific to coal combustion-related operations at Brunner Island under any Environmental Law.

16.     Plaintiff regards compliance with the terms of Paragraphs 7 and 8 as satisfactorily addressing the ozone transport issues identified in the Connecticut and Delaware 126 Petitions.  If Case No. 3:17-cv-00796 before the United States District Court for the District of Connecticut has not yet reached a final order on summary judgment by the Date of Entry, Plaintiffs will withdraw from that case.

17. Nothing in this Consent Decree shall restrict or control Plaintiff's comments, litigation, or any other activity related to facilities other than Brunner Island.

18. Nothing in this Consent Decree relieves Defendant of its obligations to comply with applicable federal, state, or local laws, regulations, or permits.

19. The failure of any Party to comply with any requirement contained in this Consent Decree will not excuse that Party from obligation to comply with other requirements contained herein. If any requirement contained in this Consent Decree is determined by the Court to be illegal or otherwise unenforceable, the remaining requirements contained herein shall still apply.

## VI. SALES OR TRANSFERS OF OWNERSHIP INTERESTS

20. If Brunner Island LLC proposes to sell or transfer an Ownership Interest in Brunner Island to any entity unaffiliated with Talen (a "Third Party Purchaser"), Defendants shall advise the Third Party Purchaser in writing of the existence of this Consent Decree prior to such sale or transfer, and shall send a copy of such written notification and, upon request and execution of an appropriate confidentiality agreement, a copy of any written agreement proposing the transfer of an Ownership Interest to the Plaintiff pursuant to Section IV (Notification) of this Consent Decree at least 60 Days before the close of such proposed sale or transfer. Recipients of this notice shall treat it as confidential until the potential transfer becomes publicly available information.

21. No sale or transfer of an Ownership Interest, whether in compliance with the procedures of this Section or otherwise, shall relieve Defendants of their obligations to ensure that the terms of this Consent Decree are implemented, unless the transferee agrees to undertake

all of the obligations required by this Consent Decree that may be applicable to the transferred or purchased Ownership Interests, and to be substituted for the transferring Defendant as a Party under the Decree pursuant to Section IX (Modification) and thus be bound by the terms thereof.

22.     This Consent Decree shall not be construed to impede the transfer of any Ownership Interests between either Defendant and any Third Party Purchaser so long as the requirements of this Consent Decree are met.  This Consent Decree shall not be construed to prohibit a contractual allocation – as between Defendants and any Third Party Purchaser of Ownership Interests – of the burdens of compliance with this Consent Decree.

## VII.  DISPUTE RESOLUTION

23.     The dispute resolution procedure provided by this Section VII shall be used to resolve disputes arising under this Consent Decree, provided that the Party invoking such procedure has first made a good faith attempt to resolve the matter with the other Party.  The provisions of this Section VII shall be the sole and exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

24.     In the event of a dispute between the Parties concerning the interpretation or implementation of any aspect of this Consent Decree, the disputing Party shall provide the other Parties with a written notice outlining the nature of the dispute and requesting informal negotiations.  If the Parties cannot reach an agreed-upon resolution within thirty (30) business days after receipt of the notice, any Party may move the Court to resolve the dispute. The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes.  The Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

25. No party shall be entitled to money damages for any breach of this Consent Decree. Specific performance shall be the sole remedy for any breach of this Consent Decree.

### VIII.  ATTORNEYS' FEES AND COSTS

26. Each Party shall bear their own attorneys' fees and costs related to this Consent Decree and any disputes under the Consent Decree.

### IX.  MODIFICATION

27. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by Plaintiff and Defendants. Where the modification constitutes a material change to any term of this Consent Decree, such subsequent written agreement signed by Plaintiff and Defendants shall be effective only upon approval by the Court.

### X.  RETENTION OF JURISDICTION

28. Until termination of this Decree, this Court shall retain jurisdiction over both the subject matter of this Decree and the Parties to this Decree to enforce the terms and conditions of this Decree. Following termination, the Court shall retain jurisdiction to enforce the provisions and obligations set forth herein that are permanent.

### XI.  TERMINATION

29. This Decree shall automatically terminate on January 1, 2029. However, if any Party has invoked the Dispute Resolution provisions in Section VII of this Decree asserting prior to January 1, 2029 that the other Party has not fulfilled any obligation under this Consent Decree, the Consent Decree shall terminate upon the resolution of the dispute and, if required, the fulfillment of any outstanding obligations under the Consent Decree. Termination of this Decree shall not affect any matter expressly set forth in this Consent Decree that is to survive

as an agreement between the Parties.

## XII.  LODGING AND ENTRY OF DECREE

30. The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Consent Decree.

31. Pursuant to Section 505(b)(3) of the CWA, this Consent Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of 45 days.  After the review period has elapsed, the Decree may be entered by the Court.  If the Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

32. The Parties agree to cooperate in good faith in order to expeditiously obtain EPA and United States Attorney General (Department of Justice, or "DOJ") review and District Court approval.  In the event that DOJ or EPA comments upon the terms of this Decree, the Parties agree to discuss and address such comments to support the entry of the Consent Decree or to make any revisions to the Decree as the Parties determine may be appropriate.

## XIII.  SIGNATORIES

33. Each undersigned representative of a Party to this Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this Decree.

34. The Parties hereby agree not to oppose entry of this Decree by this Court or challenge any provision of this Decree.

## XIV.  COUNTERPARTS

35. This Decree may be signed in counterparts.

THE UNDERSIGNED Parties enter into this Decree and submit it to this Court for approval and entry.

IT IS SO ORDERED:

DATED this ____ day of _____, 2018.

_____ J.

For Plaintiff Sierra Club:

_____   Date: 16 MAY 2018

By: Zachary M. Fabish

Title: Senior Attorney

For Defendant Talen Energy Corporation:

_____   Date: May 16, 2018

By: DEBRA L. RAGGIO

Title: SVP, REG. + EXT. AFF. COUNSEL

For Defendant Brunner Island LLC:

_____     Date: May 16, 2018
By: DEBRA L. RAGGIO
Title: SVP, REG. + EX AFF. COUNSEL